IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CURTIS SMITH,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| v. | : | |
| **COMMONWEALTH OF PENNSYLVANIA, et al.,** | : | **NO. 24-925** |
| **Defendants.** | : | |

MEMORANDUM

**Perez, J.**                                                                                            **December 20, 2024**

*Pro se* plaintiff Curtis Smith ("Plaintiff"), a self-proclaimed sovereign citizen, brings this civil action against an expansive list of state and local government entities and officials whom he alleges have acted in concert to violate his rights under state and federal law. Plaintiff has sued three groups of Defendants. The first group of Defendants, hereinafter referred to collectively as "Middletown Township," includes Middletown Township of Pennsylvania, Middletown Police Department, Chief of Police Joe Bartorilla, Middletown's Township Manager, Stephanie Teoli Kuhls, and Township Director of Building and Zoning, Jim Ennis, in their official and private capacity. The next group of Defendants, hereinafter referred to collectively as "Judicial Defendants," includes the Bucks County Court of Common Pleas, the Magisterial District Court, the Honorable Charles D. Jonas, the Honorable Raymond F. McHugh, the Honorable Robert J. Mellon, the Honorable Wallace Bateman, and the Honorable Matthew D. Weintraub. The final group of Defendants, hereinafter referred to as "Commonwealth Defendants," includes the Commonwealth of Pennsylvania, Governor Josh Shapiro, and the Pennsylvania Office of Attorney General. This memorandum will address the motion to dismiss filed by the Judicial Defendants,

to which Plaintiff has failed to file any opposition.[1] For the reasons set forth herein, the Court will grant Judicial Defendants' motion and the case, as it pertains to these Defendants, will be dismissed with prejudice.

## I.     FACTUAL BACKGROUND

Plaintiff's complaint describes a protracted history of zoning and other disputes between himself and Middletown Township and the related civil and criminal actions initiated against him in the Bucks County Court of Common Pleas. ECF No. 1. Plaintiff's allegations are sweeping and largely difficult to follow, but they primarily center on his attempted installation of a swimming pool, fence, and other alterations at his private residence in Langhorne, Pennsylvania. *Id.* at ¶¶ 49-54, 57-58, 64-66. His complaint is largely predicated on the legal fictions embraced by sovereign citizen litigants, including his assertion that his "private property, established in 1686, cannot be annexed under Township control" without Plaintiff's consent. *Id.* at ¶ 116. Plaintiff argues that Middletown Township had no authority to require him to obtain permits to make modifications on his property. *Id.* at ¶ 51, 53. It appears that Plaintiff was issued multiple citations and cease-work orders, which he ignored. The fence that he installed was removed by the police on more than one occasion. *Id.* at ¶ 61-66.

Plaintiff further alleges that Defendants subsequently "created a premeditated scheme" intended to "have him perjure himself" into telling authorities that he had an unattended two-year-old child inside his residence. *Id.* at ¶ 68. He claims that it was on this basis that police performed a warrantless welfare check on the home, and despite no child being present, police proceeded to

---

[1] Judicial Defendants filed the instant motion on April 4, 2024. *See* ECF No. 16. Plaintiff is presently incarcerated at the Pennsylvania State Correctional Institute at Pine Grove ("SCI Pine Grove"). On August 29, 2024, Plaintiff requested a status update from the Clerk of Courts. ECF No. 18. On September 5, 2024, the Clerk of Courts sent copies of the docket to Plaintiff at SCI Pine Grove. ECF No. 19. On October 31, 2024, this Court issued an Order allowing Plaintiff until November 21, 2024 to file a response to Judicial Defendants' motion. ECF No. 31. No response to Defendants' motion has been filed to date.

confiscate his arsenal of firearms and other personal affects. *Id.* at ¶¶ 69-72. From what this Court can gather, this led to his arrest and ultimate conviction for multiple felony gun offenses. Plaintiff is presently incarcerated at SCI Pine Grove, serving a sentence of 28-56 years in prison. *See Commonwealth v. Curtis Gregory Smith, Jr.*, Docket Nos. CP-09-MD-0001643-2023; CP-09-CR-0003478-2023.

Plaintiff alleges that Defendants participated in a broad "tyrannical" scheme to harass, racially discriminate, and violate his constitutional rights in an effort to generate revenue. *Id.* at ¶¶ 48 and 84-87. His complaint focuses almost exclusively on allegations against the Middletown and Judicial Defendants. The Judicial Defendants named by Plaintiff represent the courts and judges who presided over the property disputes to which Plaintiff was a party. ECF No. 16 at 2. In his complaint, Plaintiff makes vague references to various judgements issued and actions taken by the individually named judges throughout his ongoing property dispute. *See* ECF No. 1 at ¶¶ 55, 60, 63, 67, 72.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) requires the court to determine whether the plaintiff's complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "[M]ere conclusory statements do not suffice." *Id.* When evaluating such a motion, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (*quoting Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). However, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

When a motion to dismiss is based on lack of subject matter jurisdiction in addition to other defenses, "[a]n actual determination must be made whether subject matter jurisdiction exists before a court may turn to the merits of the case." *Tagayun v. Stolzenberg*, 239 F. App'x 708, 710 (3d Cir. 2007).

Plaintiff's *pro se* complaint lacks the targeted and clear pleading that is expected of pleadings drafted by attorneys. However, courts must liberally construe pleadings that are filed *pro se*. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, (1976)). Thus, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* (internal quotation marks omitted). But while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim," *Owens v. Armstrong*, 171 F. Supp. 3d 316, 328 (D.N.J. 2016) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013)), and *pro se* litigants are not exempt from complying with federal pleading standards. *See Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010).

### III.  ELEVENTH AMENDMENT IMMUNITY

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court "has long 'understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition . . . which it confirms.'" *Kimel v. Fla. Bd. of Regents,* 528 U.S. 62, 72-73 (2000) (citations omitted) (quoting *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 54 (1996)). This presupposition is that "the States entered the federal system with their sovereignty intact [and] that the judicial authority in Article III is limited by this

sovereignty." *Blatchford v. Native Vill. of Noatak & Circle Vill.*, 501 U.S. 775, 779 (1991) (citing *Welch v. Tex. Dep't of Highways and Pub. Transp.*, 483 U.S. 468, 472 (1987)). "Accordingly, for over a century now, [the Supreme Court has] made clear that the Constitution does not provide for federal jurisdiction over suits against nonconsenting States." *Kimel,* 528 U.S. at 73 (citing *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Ed. Expense Bd.*, 527 U.S. 666, 669-0 (1999)).

State actors working and sued in their official capacity are protected by this immunity unless the plaintiff is seeking "prospective relief to end an ongoing violation of federal law." *Christ the King Manor, Inc. v. Sec. U.S. Dept. of Health and Human Services*, 730 F.3d 291, 318 (3d Cir. 2013). Accordingly, suits for damages or equitable retroactive relief are barred. *Id.*; *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 697 (3d Cir. 1996) ("[R]elief that essentially serves to compensate a party injured in the past by the action of a state official, even though styled as something else, is barred by the Eleventh Amendment.").

Courts of Common Pleas and Magisterial District Courts, which are a part of the Pennsylvania Unified Judicial System, are considered state agencies entitled to Eleventh Amendment immunity. *Callahan v. City of Philadelphia*, 207 F.3d 668, 672 (3d Cir. 2000). Therefore, the Bucks County Court of Common Pleas, the Magisterial District Court, and the Judicial Defendants who are individually named and presumably being sued in their official capacity are all entitled to Eleventh Amendment immunity. Additionally, Plaintiff is not seeking the type of prospective relief for an ongoing violation which would negate this immunity. To the extent this Court would even be able to articulate what ongoing violation of federal law Plaintiff is alleging against the Judicial Defendants, the Court has already denied Plaintiff's request for injunctive relief. *See* ECF No. 8. Plaintiff's remaining claims are based on discrete, past events—the taking of and trespass on his personal property, destruction of his unpermitted property

modifications, the alleged conspiracy to violate his rights, and ultimately his criminal arrest and conviction. These claims do not constitute the type of prospective relief for an ongoing violation that would negate the Judicial Defendants' immunity. As such, this Court lacks subject matter jurisdiction to hear Plaintiff's claims against the Judicial Defendants.

### IV. JUDICIAL IMMUNITY

This Court also lacks jurisdiction over the individually named judges because they enjoy absolute immunity from suit and the assessment of damages in their individual capacity. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). There are only two situations where the doctrine of absolute judicial immunity does not apply: actions not taken in their judicial capacity and/or actions taken in "complete absence of all jurisdiction." *Id.* Actions are considered to be within a judge's official capacity when the act itself is "a function normally performed by a judge." *Id.* Actions taken in the absence of all jurisdiction are those where the judge clearly had no jurisdiction over the subject-matter—such as a probate judge with authority only over wills and estates presiding over a criminal case. *Bradley v. Fisher*, 80 U.S. 335, 352 (1871). Legal errors by judges are not sufficient to overcome this broad absolute immunity. *Stump v. Sparkman*, 435 U.S. 349, 359 (1978) ("A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors.").

The Pennsylvania Courts of Common Pleas have "unlimited original jurisdiction of all actions and proceedings" that are not otherwise vested in a different state court by statute. 42 Pa. Cons. Stat. § 931(a). Judicial Defendants had jurisdiction to hear, rule upon, and enter orders in the cases that were before them. See 42 Pa. Cons. Stat. § 931(a) ("courts of common pleas shall have unlimited original jurisdiction of all actions and proceedings, including all actions and proceedings heretofore cognizable by law or usage in the courts of common pleas."); 42 Pa. Cons.

Stat. § 1515 (laying out the jurisdictional parameters of Pennsylvania's Magisterial District Courts, including summary code violations). Plaintiff's claims against Judicial Defendants concern the license and inspection violations pursued by the Commonwealth of Pennsylvania via Middletown Township against him in the Bucks County Court of Common Pleas and the Magisterial District Court. Judicial Defendants provide, as an exhibit to their motion, the Magisterial District Court Docket Sheets pertaining to the permit and inspection violations of which Plaintiff was found guilty. *See* ECF No. 16-2. While this Court does not have a full accounting of all the judgments and other judicial actions taken by the judges in reference to Plaintiff's property, it is clear that, at least as it pertains to these code violations, that Judicial Defendants were acting both within their jurisdiction and carrying out functions normally performed by a judge.

## V. ROOKER-FELDMAN DOCTRINE

Judicial Defendants have asked this Court to dismiss all claims against them pursuant to the *Rooker-Feldman* doctrine, which derives its name from the Supreme Court's decisions in *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983). *Rooker* and *Feldman* established the principle that federal district courts lack jurisdiction over suits that are essentially appeals from state-court judgments. *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 165 (3d Cir. 2010). The doctrine "preclude[s] lower federal court jurisdiction over claims that were actually litigated or 'inextricably intertwined' with adjudication by a state's courts." *Parkview Assocs. P'ship v. City of Leb.,* 225 F.3d 321, 325 (3d Cir. 2000) (*quoting Gulla v. North Strabane Twp.,* 146 F.3d 168, 171 (3d Cir. 1998)). A federal claim is "inextricably intertwined" with an issue adjudicated by a state court when (1) the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief, or (2) the federal court must take an action that would

negate the state court's judgment. *In re Knapper,* 407 F.3d 573, 581 (3d Cir. 2005) (quoting *Walker v. Horn,* 385 F.3d 321, 330 (3d Cir. 2004)).

The Third Circuit has announced four requirements that must be met for the *Rooker-Feldman* doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff "complain[s] of injuries caused by [the] state-court judgments[;]" (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments. *Great W.* Mining, 615 F.3d 159, 166 (3d Cir. 2010) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 364 F.3d 102, 284 (3d Cir. 2004))

As previously discussed, this Court has somewhat limited information regarding the underlying state court judgments Plaintiff references in his Complaint. Nevertheless, it is clear that Plaintiff is complaining of injuries caused by state-court judgments and that certain state-court judgments were rendered before Plaintiff commenced this federal action. Pursuant to state law and/or local ordinances, Judicial Defendants found Plaintiff guilty of license and permit violations and imposed financial penalties. The present federal action complains of injuries sustained as a result of those judicial determinations and seeks reversal by this Court. That is, the state-court judgment itself is the source of his injury.

To the extent Plaintiff is alleging a conspiracy by state actors to violate his constitutional rights, his Complaint fails to sufficiently articulate what involvement Judicial Defendants played in this wider scheme. *See Great W. Mining,* 615 F.3d 159 at 172 (concluding that the *Rooker-Feldman* doctrine was inapplicable where plaintiff was not complaining of injuries caused by the state-court judgments and inviting the District Court to review those judgments, but was instead asserting an independent claim that the alleged conspiracy between judges and other state actors violated his due process right to be heard in an impartial forum).

The *Rooker-Feldman* doctrine precludes jurisdiction over Plaintiff's requested relief because the claims were both previously litigated in state court and are inextricably intertwined with the previous adjudications. This Court cannot ignore that "the relief requested . . . requires determining that the state court's decision is wrong or . . . void[ing] the state court's ruling." *FOCUS v. Allegheny County Court of Common Pleas,* 75 F.3d 834, 840 (3d Cir. 1996).

## VI.     CONCLUSION

This Court will grant Judicial Defendants' motion and dismiss Plaintiff's claims against them with prejudice because amendment of those claims would not cure the aforementioned deficiencies. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).