IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CURTIS SMITH,** | : | |
| Plaintiff, | : | CIVIL ACTION |
| v. | : | |
| **COMMONWEALTH OF PENNSYLVANIA, et al.,** | : | NO. 24-925 |
| Defendants. | : | |

## MEMORANDUM

**Perez, J.**                                                                                                   December 26, 2024

  *Pro se* plaintiff Curtis Smith ("Plaintiff"), a self-proclaimed sovereign citizen, brings this civil action against an expansive list of state and local government entities and officials whom he alleges have acted in concert to violate his rights under state and federal law. Plaintiff has sued three groups of Defendants. The first group of Defendants, hereinafter referred to collectively as "Middletown Township," includes Middletown Township of Pennsylvania, Middletown Police Department, Chief of Police Joe Bartorilla, Middletown's Township Manager, Stephanie Teoli Kuhls, and Township Director of Building and Zoning, Jim Ennis, in their official and private capacities. The next group of Defendants, hereinafter referred to collectively as "Judicial Defendants" includes the Bucks County Court of Common Pleas, Magisterial District Court, the Honorable Charles D. Jonas, the Honorable Raymond F. McHugh, the Honorable Robert J. Mellon, the Honorable Wallace Bateman, and the Honorable Matthew D. Weintraub. The final group of Defendants, hereinafter referred to as "Commonwealth Defendants" includes the Commonwealth of Pennsylvania, Governor Josh Shapiro, and the Pennsylvania Office of Attorney General. This memorandum will address the motion to dismiss filed by the Middletown Defendants, to which

Plaintiff has failed to file any opposition.[1] Because Plaintiff fails to state any plausible claims for a violation or conspiracy to violate his constitutional rights or sufficiently allege a fraud or other conspiracy, the Court will grant Middletown Defendants' motion. Having previously dismissed Plaintiff's claims as they pertained to the Commonwealth Defendants (ECF No. 23) and the Judicial Defendants (ECF No. 25), this case will now be dismissed in its entirety.

I.  FACTUAL BACKGROUND

Plaintiff's Complaint describes a protracted history of zoning and other disputes between himself and Middletown Township and the related civil and criminal actions initiated against him in the Bucks County Court of Common Pleas. ECF No. 1. Plaintiff's allegations are sweeping and largely difficult to follow, but they primarily center on his attempted installation of a swimming pool, fence, and other alterations at his private residence in Langhorne, Pennsylvania. *Id.* at ¶¶ 49-54, 57-58, 64-66. His complaint is largely predicated on the legal fictions embraced by sovereign citizen litigants, including his assertion that his "private property, established in 1686, cannot be annexed under Township control" without Plaintiff's consent. *Id.* at ¶ 116. Plaintiff argues that Middletown Township had no authority to require him to obtain permits to make modifications on his property. *Id.* at ¶¶ 51, 53. It appears that Plaintiff was issued multiple citations and cease-work orders, which he ignored. The fence that he installed was removed by the police on more than one occasion. *Id.* at ¶¶ 61-66.

Plaintiff further alleges that Defendants subsequently "created a premeditated scheme" intended to "have him perjure himself" into telling authorities that he had an unattended two-year-

---

[1] Middletown Defendants filed the instant motion on March 28, 2024. *See* ECF No. 13. Plaintiff is presently incarcerated at the Pennsylvania State Correctional Institute at Pine Grove ("SCI Pine Grove"). On August 29, 2024, Plaintiff requested a status update from the Clerk of Courts. ECF No. 18. On September 5, 2024, the Clerk of Courts sent copies of the docket to Plaintiff at SCI Pine Grove. ECF No. 19. On October 31, 2024, this Court issued an Order allowing Plaintiff until November 21, 2024 to file a response to Judicial Defendants' motion. ECF No. 31. No response to Defendants' motion has been filed to date.

old child inside his residence. *Id.* at ¶ 68. He claims that it was on this basis that police performed a warrantless welfare check on the home, and despite no child being present, police proceeded to confiscate his arsenal of firearms and other personal affects. *Id.* at ¶¶ 69-72. From what this Court can gather, this led to his arrest and ultimate conviction for multiple felony gun offenses. Plaintiff is presently incarcerated at SCI Pine Grove, serving a sentence of 28-56 years in prison. *See Commonwealth v. Curtis Gregory Smith, Jr.*, Docket Nos. CP-09-MD-0001643-2023; CP-09-CR-0003478-2023.

Plaintiff alleges that Defendants participated in a broad "tyrannical" scheme to harass, racially discriminate, and violate his constitutional rights in an effort to generate revenue through unlawful means. *Id.* at ¶¶ 48 and 84-87. His complaint focuses almost exclusively on allegations against the Middletown and Judicial Defendants. Plaintiff rejects Middletown's authority to enforce permitting requirements and alleges a conspiracy by Defendants to target him in furtherance of an unlawful conspiracy. The Judicial Defendants represent the courts and judges who presided over the property disputes to which Plaintiff was a party. ECF No. 16 at 2. Plaintiff offers no explanation for his conclusion that Middletown unlawfully required, and/or denied permits or licenses for his various home modifications, other than to assert that "Defendants have no authority to regulate matters on his private property." *Id.* at ¶¶ 50-55. Plaintiff references Defendant Ennis' involvement in the permit and license process, alleging that Ennis denied him a pool permit, issued him citations, and posted a stop work order. *Id.* at ¶¶ 51-54. Plaintiff does not otherwise make any specific allegations against the other two individually named Middletown Defendants.

## II. PLAINTIFF'S CLAIMS FOR RELIEF[2]

Plaintiff's Complaint suffers from a scattershot, imprecise style of presentation that strains his obligation to "give the defendant[s] fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing Fed. R. Civ. P. 8(a)(2)). Nevertheless, the court must accept its well-pled factual allegations, construe them "in the light most favorable" to Plaintiff, and draw all reasonable inferences therefrom in determining whether he has stated a plausible claim for relief. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786–87 & n.2 (3d Cir. 2016).

Plaintiff's Complaint asserts thirteen counts (ECF No. 1 ¶¶ 94-276):

**Count 1.** Preliminary and Permanent Injunctive Relief [3]

**Count 2.** Declaratory Judgment Determining the Duties, Obligations, Rights and Immunities between Plaintiff and the Defendants, and to Superiority of Title

**Count 3.** Declaratory Judgment Magisterial Court Orders and Warrants are Void for Lack of Subject Matter Jurisdiction due to a true Conflict of Law

**Count 4.** Common Law Trespass

**Count 5.** Vindication of Rights for Violations of the Limitations Created by the First,[4] Second, Fourth, Fifth, Eighth,[5] and Fourteenth Amendments as Enforced by 42 U.S.C. §§ 1983, 1985, 1986 & 1988

---

[2] To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). We look for "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements" of a claim for relief. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly,* 550 U.S. at 556). A complaint filed by a pro se litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

[3] This Court has already denied Plaintiff's motion for a preliminary injunction. *See* ECF No. 8. To the extent this request for relief is made in connection to Plaintiff's other legal claims, they will be addressed individually.

[4] Plaintiff fails to advance any factual basis or legal theory related to a deprivation of his First Amendment rights and therefore cannot establish federal question jurisdiction on this basis. *See Levine v. United Healthcare Corp.,* 402 F.3d 156, 162 (3d Cir. 2005) (citation omitted). Plaintiff has not sufficiently raised an access-to-courts claim under the First Amendment. Instead, he has merely his waged his disagreement over the imposition and application of zoning and criminal codes against him.

[5] To the extent Plaintiff is attempting to make an argument that Middletown has violated his right to be free from cruel and unusual punishment pursuant to the Eighth Amendment, this Court cannot discern what factual averments would apply to this legal argument. Plaintiff is clearly not making a claim related to the conditions of his confinement because

**Count 6.** Vindication of Rights for Violations Taken Under Color of Law as Enforced by 42 U.S.C. §§ 1983, 1985, 1986 & 1988

**Count 7.** Fraud by Omission and Fraudulent Concealment

**Count 8.** Abuse of Legal Process/Abuse of Administrative Process

**Count 9.** Enterprise Racketeering

**Count 10.** Violation of 18 U.S.C. § 1962(D) by Conspiring to Violate 18 U.S.C. § 1962(C)

**Count 11.** Constitutional Challenge Pa. Code 18 § 6105 §§A1, 18 §907 §§ C and 18 §4906 §§B1[6]

**Count 12.** Intentional Infliction of Emotional Distress

**Count 13.** Negligent Infliction of Emotional Distress

Plaintiff's request for relief does not assert a specific overreach of Middletown's permitting requirements, but rather, an all-out repudiation of the Township's zoning authority and a broad conspiracy to generate revenue through unlawful means. Plaintiff's Complaint is lengthy, but it is sparse with factual assertions related to the legal conclusions he asks this Court to draw. He presents a bewildering variety of legal theories but focuses on the notion that the State and municipal authorities lack authority over him. Examples of this common thread include:

> "Plaintiff, as a native Pennsylvanian moor, denies he is a 'res-ident' of the Commonwealth of Pennsylvania, as such term would infer that Plaintiff has made a political choice to first become a citizen of the federal district, and then registered to be *property* (res) *identified* (ident) by some form pledge of his "person" as collateral . . ." *Id.* at ¶ 17.

> "Plaintiff is the king of his land established by the original land patent granted . . . [in] 1686, *prior to the existence of the United States of America*" *Id.* at ¶ 22.

> "The township and its agents removed the fence without authority" *Id.* at ¶ 71.

---

he was not incarcerated at the time of his filing of the complaint. Plaintiff has not otherwise articulated that this claim is based on excessive bail, some other pre-conviction conduct by state actors, or an excessive fine. Drawing all reasonable inferences in Plaintiff's favor, he has still failed to adequately state a claim pursuant to the Eighth Amendment.

[6] To the extent Plaintiff is attempting to state a claim for a Second Amendment violation, he has not articulated how or why the firearm offenses are unconstitutional on their face or as applied to him.

"Plaintiff herein challenges the Constitutional authority of the Defendants to regulate the private use of [his] private property" and "challenges the state laws used to levy criminal charges against him." *Id.* at ¶¶ 77-78.

"Plaintiff denies a valid contractual relationship with or obligation to the Township . . ." *Id.* at ¶ 109.

"Plaintiff is informed and believes that the private property in question is located *without* the jurisdiction or authority of the Township . . ." *Id.* at ¶ 112.

"Plaintiff's private property, established in 1686, cannot be annexed under Township control without [Plaintiff's] consent . . ." *Id.* at ¶116.

Plaintiff is claiming damages in excess of $10,000,000.

### III.     PLAINTIFF'S SOVEREIGN CITIZENSHIP CLAIMS

Plaintiff's entire Complaint is premised on his belief that he is not subject to any laws or authority within the United States or its subdivisions of government. "Sovereign citizen" arguments, though not uncommon in our courts, are patently frivolous. *See Smithson v. York Cty. Court of Common Pleas*, No. 1:15-CV-01794, 2016 WL 4521854, at *4 (M.D. Pa. Aug. 3, 2016), *report and recommendation adopted*, Civ. No. 15-01794, 2016 WL 4523985 (M.D. Pa. Aug. 29, 2016), *appeal dismissed sub nom.*, No. 16-3691, 2016 WL 9735721 (3d Cir. Dec. 13, 2016) ("[Plaintiff] claims that the defendants have no authority to incarcerate him because he is a 'sovereign citizen' and thus not subject to the laws of the Commonwealth of Pennsylvania—a patently frivolous claim.... [which] has no conceivable validity in American law."); *See also Bey v. Hillside Twp. Mun. Court*, No. Civ. 11-7343, 2012 WL 714575, at *6 (D.N.J. Mar. 5, 2012) (holding that claims based on alleged citizenship in a sovereign nation organization were inherently frivolous, noting these suits demand "protections of federal and state law while simultaneously proclaiming their independence from and total lack of responsibility under those same laws.") (internal citations omitted). To the extent Plaintiff asserts that he is exempt from the jurisdiction of Pennsylvania, Middletown Township, or the laws of the United States, such an

argument "has no conceivable validity in American law." *United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990). Any request for a declaratory judgment in this vein, including but not limited to the requested relief in Count 2 of Plaintiff's Complaint, fail to state a claim and are dismissed as frivolous.

### IV.  RELIEF UNDER THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. §§ 1983, 1985, and 1986[7]

Section 1983 does not, itself, create any rights; it merely provides "private citizens with a means to redress violations of federal law committed by state [actors]." *Woodyard v. Cty. of Essex*, 514 F. App'x 177, 180 (3d Cir. 2013); *see also Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906–07 (3d Cir. 1997). To bring a Section 1983 claim, "a [ ] plaintiff [must] prove two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011); *Hilton v. Whitman*, Civ. No. 04–6420, 2008 WL 5272190, at *4 (D.N.J. Dec. 16, 2008) (noting that the plaintiff must "identify the exact contours of the underlying right said to have been violated."). To bring a conspiracy claim under Section 1983, Plaintiff must show that "persons acting under color of state law conspired to deprive him of a federally protected right." *Perano v. Township of Tilden*, 423 F. App'x 234, 239 (3d Cir. 2011) (noting that "[a]s a threshold matter . . . a § 1983 conspiracy claim only arises when there has been an actual deprivation of a right").

---

[7] Section 1986 provides that "[e]very person who, having knowledge of any wrongs conspired to be done, and mentioned in . . . [42 U.S.C. 1985], are about to be committed, and having the power to prevent or aid in preventing the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured . . ." 42 U.S.C. § 1986 (1981). Because the Court finds no valid claim for relief under Section 1985, there is no cause of action under Section 1986. *See Robison v. Canterbury Village, Inc.,* 848 F.2d 431 n.10 (3d Cir. 1988); *Howard v. Pine Forge Academy,* 678 F. Supp. 1120, 1125 (E.D. Pa.1987) (citing *Lyon v. Temple Univ.,* 507 F. Supp. 471 (E.D. Pa.1981).

"A municipality or other local government may be liable under [Section 1983] if the government body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978)). "But, under § 1983, local governments are responsible only for 'their *own* illegal acts.'" *Id.* (quoting *Pembaur v. Cincinatti*, 475 U.S. 469, 479 (1986). Plaintiffs who seek to impose liability on local governments under Section 1983 must prove that action was taken pursuant to official municipal policy and caused their injury. Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. *Id.* (internal citations and quotations omitted).

Section 1985 provides a cause of action against persons who "conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). To state a claim under this provision, "a plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to a person or property or the deprivation of any right or privilege of a citizen of the United States." *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997).

"With near unanimity, the courts have rejected complaints containing mere conclusory allegations of deprivations of constitutional rights protected under § 1985(3). A conspiracy claim based upon § 1985(3) requires a clear showing of invidious, purposeful and intentional discrimination between classes or individuals." *Slater v. Susquehanna Cnty.*, 613 F. Supp. 2d 653, 661 (M.D. Pa. 2009) (quoting *Robinson v. McCorkle*, 462 F.2d 111, 113 (3d Cir. 1972)); *see also*

*Grigsby v. Kane*, 250 F. Supp. 2d 453, 458 (M.D. Pa. 2003) ("[O]nly allegations which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and actions taken in furtherance of the conspiracy, will be deemed sufficient.").

Plaintiff attempts to allege that, under color of state law, Middletown Defendants deprived him of his right to privacy, right to be free from unreasonable searches and seizures, and his due process rights. ECF No. 1 at 162. Plaintiff describes actions taken by Middletown Defendants to enforce municipal zoning ordinances in reference to construction of his swimming pool, fence, and other improvements without proper permitting, but he fails to demonstrate how any of those actions rise to a deprivation of rights. He likewise pleads only conclusory allegations of a conspiracy, failing to plead any specifics about its formation or membership. Plaintiff has not alleged facts connecting any Middletown policy or practice to a constitutional violation or pointed to a specific zoning ordinance that is unconstitutional as applied to him. While he raises the specter of racial animus, he does not allege that is the motivating force behind a conspiracy nor does he connect it to an unconstitutional act or policy.

In the context of real property, a substantive due process claim requires a government deprivation that "shocks the conscience." *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008). Plaintiff has not alleged such a deprivation here, nor is there any indication that he was not "afford[ed] a full judicial mechanism" for challenging any perceived deprivations by Middletown. *See Northeast Land Dev., LLC v. City of Scranton*, 728 F. Supp. 2d 617, 626 (quoting *Midnight Sessions, Ltd. v. City of Philadelphia*, 945 F.2d 667, 681 (3d Cir. 1991), *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA*, 316 F.3d 392, 400 (3d Cir. 2003)) ("[W]hen a state 'affords a full judicial mechanism with which to challenge the administrative decision,' the state provides adequate due process.'").

Plaintiff has not raised any specific challenge to a zoning ordinance nor articulated how Middletown's enforcement thereof amounted to an unconstitutional "regulatory taking" of his property. That is because "[z]oning regulations are the 'classic example' of permissible regulations that do not require compensation even where they 'prohibit the most beneficial use of the property.'" *Nekrilov v. City of Jersey City*, 45 F.4th 662, 675 (3d Cir. 2022). Though Plaintiff cursorily asserts that the actions of Middletown were not a valid exercise of its police powers, he does not dispute that he failed to obtain a permit or explain how zoning law was unfairly or unequally enforced against him. Plaintiff does not put forth any basis for a finding that his property was in any way *taken* for public use, or that the temporary trespass by Middletown Defendants rose to the level of a de facto taking.

## V.     RACKETEERING ALLEGATIONS

Plaintiff's RICO claims fail to state a claim upon which relief may be granted. RICO "makes it unlawful 'for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.'" *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 362 (3d Cir. 2010) (quoting 18 U.S.C. § 1962(c)). To state a civil RICO claim, a plaintiff must plausibly allege the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Id.* (internal quotations omitted). "'Racketeering activity' is defined in the RICO statute to comprise the state law offenses of murder, kidnaping[sic], gambling, arson, robbery, bribery, extortion, dealing in obscene matter, and dealing in a controlled substance or listed chemical, as well as several federal offenses such as mail and wire fraud." *Talley v. Halpern ex rel. Est. of Winderman*, No. 05-4184, 2005 WL 2002611, at *4 (E.D. Pa. Aug. 16, 2005) (citing 18 U.S.C. § 1961(1)). "According to the

RICO statute, a 'pattern of racketeering activity' requires at least two acts of racketeering activity within a ten-year period." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 363 (3d Cir. 2010) (quoting 18 U.S.C. § 1961(5)). Additionally, a plaintiff must have sustained "injury to business or property" caused by the alleged RICO violation in order to bring a RICO claim. *Maio v. Aetna, Inc.*, 221 F.3d 472, 482–83 (3d Cir. 2000).

Plaintiff does not allege any conduct that could be considered racketeering activity for purposes of setting forth a legal basis for a RICO claim. *See Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("The claim that the defendants [including numerous judges, staff attorneys, and an assistant united states attorney] engaged in a RICO conspiracy by failing to properly address issues on appeal and 'bribing' witnesses to testify pursuant to plea agreements lacks any arguable basis in law and was properly dismissed as frivolous."). Even assuming Plaintiff could allege a basis for a tort or fraud claim under state law, which this Court does not conclude, he would not have a legal basis for a RICO claim. *See Annulli v. Panikkar*, 200 F.3d 189, 200 (3d Cir. 1999) ("We will not read language into § 1961 to federalize every state tort, contract, and criminal law action."), *overruled on other grounds by Rotella v. Wood*, 528 U.S. 549 (2000).

## VI.     REMAINING STATE LAW CLAIMS

In addition to federal claims, Plaintiff is asserting state law claims for common law trespass and negligent and intentional infliction of emotional distress. Such claims would fall within the court's supplemental jurisdiction. Whether to exercise supplemental jurisdiction is within the discretion of the court. 28 U.S.C. § 1367(c)(3) provides that district courts may decline to exercise supplemental jurisdiction over a state law claim if the district court has dismissed all claims over which it has original jurisdiction. When deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values

of judicial economy, convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cahill*, 484 U.S. 343, 350 (1988)). The Third Circuit has held that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of West Miflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)).

There is nothing unique about this case such that considerations of judicial economy, convenience, and fairness provide an affirmative justification for exercising supplemental jurisdiction over Plaintiff's state law claims.

## VII. CONCLUSION

This Court will grant the Middletown Defendants' motion and dismiss Plaintiff's claims against them with prejudice because amendment of those claims would not cure the aforementioned deficiencies. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).